UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CLEOLA L. EARLEY,**

    **Plaintiff,**

  v.            Civil Action 2:19-cv-53
                 Chief Judge Algenon L. Marbley
                 Magistrate Judge Chelsey M. Vascura

**COMMISSIONER OF SOCIAL
SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

  Plaintiff, Cleola L. Earley ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits. This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 18), and the administrative record (ECF No. 8). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

### I.  BACKGROUND

  Plaintiff filed her application for Title II Social Security Benefits on June 26, 2015, alleging (after amendment) that she had been disabled since June 26, 2015. (R. 333, 205.) On March 29, 2018, following administrative denials of Plaintiff's application initially and on reconsideration, a hearing was held before Administrative Law Judge Renita Bivins (the "ALJ"). (*Id.* at 200–232.) Plaintiff, represented by counsel, appeared and testified. Vocational expert

Shawna McCullah (the "VE") also appeared and testified at the hearing.  On July 5, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.* at 13–26.)  On August 24, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. 1–4.)  Plaintiff then timely commenced the instant action.  (ECF Nos. 1, 3.)

Plaintiff raises a single issue in her Statement of Errors (ECF No. 13): Plaintiff contends reversal is warranted because "[t]he ALJ's mental residual functional capacity is not supported by substantial evidence."  (*Id.* at 6.)  Within this contention of error, Plaintiff asserts that the ALJ erred in failing to explain why he did not include the residual functional capacity ("RFC")[1] limitations opined by sources he assigned weight and whose opinions he found to be "largely consistent" with the record.  (*Id*. at 6–11.)  Specifically, Plaintiff maintains that the ALJ's mental RFC failed to sufficiently account for the opinions rendered by James Spindler, M.S., an examining psychologist, and two state-agency reviewing psychologists, Karla Voyten, Ph.D., and Jaime Lai, Psy.D.

In his Memorandum in Opposition (ECF No. 18), the Commissioner counters that the ALJ reasonably weighed the medical opinions and accounted for the limitations she found in Plaintiff's RFC.

## II. THE ALJ'S DECISION

On July 5, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. 13–26.)  At step one of the sequential evaluation

---

[1] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).

process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since June 26, 2015, Plaintiff's alleged disability onset date. (*Id.* at 15.) The ALJ found that Plaintiff had the severe impairments of fibromyalgia, degenerative disc disease, affective disorder, anxiety disorder, and obsessive-compulsive disorder. (*Id.*) She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 16–17.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can climb ramps and stairs occasionally but never climb ladders, ropes, or scaffolds. She can frequently balance, occasionally stoop, kneel, crouch, and crawl. She can perform occasional overhead reaching bilaterally and frequent handling with left extremity. She must avoid all exposure to unprotected heights. The claimant can understand, remember, and carry out simple and detailed instructions to complete routine, repetitive tasks. She is able to maintain concentration and attention for two hour intervals in 8-hour workday. She is able to ask simple questions or request assistance and able to adapt to infrequent changes in work processes and environment. She is able to engage in occasional superficial interaction with the public and coworkers. She can engage in occasional interaction with supervisors for no more than one third of the workday with less than

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> occasional interaction by the supervisor to ensure work standards/quality is maintained. The claimant would be working with things rather than people. Due to medical conditions, symptoms and pain the claimant would be off task 8% of the work period.

(*Id.* at 17–18.) The ALJ then relied on the hearing testimony of the VE to conclude that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. She therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period. (*Id.* at 26.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v.*

*Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV. ANALYSIS

As set forth above, within Plaintiff's sole contention of error challenging the ALJ's RFC determination, she maintains that the ALJ erred in his consideration of the opinions rendered by Mr. Spindler and Drs. Voyten and Lai. More specifically, Plaintiff posits that the ALJ erred in failing to explain why these sources' opined limitations were omitted from Plaintiff's RFC. The undersigned disagrees and finds no error in the ALJ's consideration of these opinions and that substantial evidence supports her RFC determination.

The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). ALJs must consider all medical opinions that they receive in evaluating a claimant's case. 20 C.F.R. § 404.1527(c). Further, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996). However, unlike opinions from treating medical sources, non-treating medical sources are not afforded any particular deference. *See* 20 C.F.R. § 416.927(c)(2).

In assessing medical opinions, ALJs are required to consider the following factors:

(1) Examining relationship. Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.

5

(2) Treatment relationship. Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

* * *

(3) Supportability. The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions. We will evaluate the degree to which these medical opinions consider all of the pertinent evidence in your claim, including medical opinions of treating and other examining sources.

(4) Consistency. Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.

(5) Specialization. We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.

(6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the medical opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that a medical source has, regardless of the source of that understanding, and the extent to which a medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

20 C.F.R. § 404.1527(c).

Plaintiff did not submit medical opinions from any treating sources. As set forth above, the medical opinions at issue were drafted by one examining, but non-treating, psychologist (James N. Spindler, M.S., R. 823–29) and two non-examining state agency reviewing psychologists (Karla Voyten, Ph.D., R. 244–47, and Jaime Lai, Psy.D., R. 262–65).

6

Mr. Spindler diagnosed Plaintiff with an unspecified bipolar disorder, an unspecified depressive disorder, and an unspecified anxiety disorder. (R. 827.) He stated that Plaintiff appeared to be functioning in the average range of intelligence and that she seemed "intellectually capable of understanding, remembering and carrying out instructions in most job settings." (R. 828.) Mr. Spindler noted that Plaintiff "clearly is not motivated to return to work" and that it was "unlikely" that "she would have significant problems in responding appropriately to supervision and co-workers." (*Id.*) He observed that Plaintiff "did not appear to have any major difficulty focused during [the] interview," but opined that Plaintiff's mental problems would "make it difficult for her to sustain a working pace and to maintain a level of attention and concentration that would be required for most job settings." Finally, Mr. Spindler stated that it was "unlikely" that Plaintiff "would be willing to tolerate even the routine stressors of competitive employment." (R. 828.)

At the initial review level, state agency psychologist Dr. Voyten reviewed Plaintiff's medical records and accorded "great" weight to Mr. Spindler's opinions. (R. 242.) Dr. Voyten opined that Plaintiff had no limitation in her ability to carry out even detailed instructions, that her ability to maintain concentration and pace was moderately limited, and that she "could sustain an ordinary routine but may require occasional redirection in order to stay on task & to maintain an adequate work pace." (R. 245.) She further opined that Plaintiff could only have occasional and superficial contact with the public, co-workers, and supervisors. Finally, Dr. Voyten opined that Plaintiff's "ability to handle stress and pressure in the workplace would be reduced but adequate to handle the stresses of a routine, repetitive 3-4 step task." (R. 246.)

Dr. Lai, at the reconsideration level, agreed with Dr. Voyten that Plaintiff could "sustain adequate concentration and persistence to complete 3-4 step routine, repetitive tasks," and that

7

Plaintiff "retains the capacity for occasional superficial contact" with the public, co-workers, and supervisors. (R. 263-64.) Dr. Lai added that Plaintiff "may require occasional redirection to task & intermittent checks by supervisor to ensure work standards of qualify and production are being maintained." (R. 263.) Dr. Lai also opined that Plaintiff could "handle the stresses of 3-4 step routine, repetitive tasks in a setting where changes are infrequent and any major changes occur with prior explanation and gradual implementation." (R. 264.) Finally, Dr. Lai observed that Mr. Spindler's opinion "relies heavily on the subjective reports of symptoms and limitations" Plaintiff provided and found that "the totality of the evidence does not support [Mr. Spindler's] opinion," which she further found "is an overestimate of the severity of [Plaintiff's] restrictions/limitations." (R. 266.)

In arriving at Plaintiff's mental RFC, the ALJ discussed each of these opinions. She assigned the opinions of Drs. Voyten and Lai "some weight," pointing out that they are "non-examining sources." (R. 23.) She likewise assigned Mr. Spindler's opinion "some weight," observing that his opinion "was based on a one-time examination in non-treating context." (*Id.*) The ALJ added that the opinions were "largely consistent with each other and with other evidence, such as [Plaintiff's] counseling records." (R. 23-24 (citing numerous treatment records reflecting that Plaintiff presented with "varying moods").)

Also in support of her mental RFC finding, the ALJ offered a substantial discussion of Plaintiff's mental health treatment records, a discussion of the significant activities of daily living ("ADLs") Plaintiff endorsed, and a discussion of her observations of Plaintiff during the hearing. For example, the ALJ discussed Plaintiff's treatment records from Neurobehavioral Medicine Consultants and points out that in January 2018, Plaintiff complained that her "main problem" was the stress she was under, which Plaintiff attributed to "having to do everything

8

such as shop, give her son a bath and get him dinner along with the rest of the family, clean the house, take care of the bills making sure they are paid on time, give family money and so on." (R. 22 (citing Exhibit 30F at p. 1, R. 2403).) The ALJ also pointed out that Plaintiff's records reflected that she was "not medication or treatment compliant." (R. 22 (citing Exhibit 30F at p. 24, R. 2426 (Feb. 2018 treatment record noting that Plaintiff "reports that she has not been taking [L]amictal . . . [and] that she is not medication or treatment compliant")).) The ALJ further observed that in April 2018, in addition to Plaintiff's other household and childrearing duties, she was caring for her mother, who was living with her and struggling with many health problems. (R. 22 (citing Apr. 2018 treatment record).) The ALJ also considered Plaintiff's testimony and record evidence reflecting that she cooks, vacuums, washes dishes, shops, performs laundry activities, watches television programing such as the news and weather channel, uses her cell phone without difficulty, can count change, as well as evidence reflecting that she cares for her children, ages 5 and 15; and also her mother, who lives with her and struggles with many health issues. The ALJ offered the following discussion of his observations of Plaintiff at the hearing:

> The undersigned recognizes that an Administrative Law Judge's observations at a hearing alone do not constitute substantial evidence. However, when assessing the claimant's alleged degree of functional limitation, such observations are worthy of consideration when combined with other inconsistencies present in the record. . . . The undersigned notes that at the hearing, the claimant was attentive to questioning, able to sustain conversation and answer questions with meaningful responses without asking for clarification, without confusion, and she was able to maintain her train of thought while responding to questions. She was able to recall important details of her medical, treatment, and parenting history. There was no evidence that she had difficulty in understanding verbal communications. No evidence she had difficulty in expressing herself verbally. While the hearing was short-lived and is not considered a conclusive indicator of the claimant's overall level of pain on a day-to-day basis or mental functioning, these observations during the hearing are given some slight weight in an evidence-based analysis of the administrative record to determine whether the nature, intensity, frequency, or severity of a claimant's allegations and symptoms affect her ability to wok and in reaching the residual functional capacity. However it is emphasized that this observation is only one

9

among many being relied on in reaching a conclusion regarding the claimant's allegations and the residual functional capacity.

(R. 20 (internal citations to the record omitted).)

The ALJ also offered a discussion in support of his conclusions that Plaintiff had only moderate limitation in the areas of understanding, remembering, or applying information; interacting with others; and concentration, persistence, or pace, as well as an explanation of how these limitations were accommodated within the RFC. (R. 16-17; 22-23.)

In view of the foregoing, the undersigned concludes the ALJ's discussion of the record evidence, together with his findings, allow for meaningful review and that substantial evidence supports his mental RFC determination and nondisability finding.

Plaintiff's arguments to the contrary are unavailing for several reasons. First, although the ALJ found these opinions "largely consistent" with the remainder of the record, consistency is but one factor that must be considered under § 404.1527(c). As the ALJ appropriately noted, non-treating and non-examining sources such as Mr. Spindler and Drs. Voyten Lai are generally given less weight. *See Andres v. Comm'r of Soc. Sec.*, 733 F. App'x 241, 245–46 (6th Cir. 2018) (the absence of an on-going treatment relationship means "the ALJ is entitled to give less weight to the consultative examiner's opinion") (citing *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 467 (6th Cir. 2017)). Further, "ALJs must give 'good reasons' only for their weighing of 'treating source' opinions." *Livingston v. Comm'r of Soc. Sec.*, 776 F. App'x 897, 899 (6th Cir. 2019) (citing 20 C.F.R. § 404.1527(c)(2) and *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)). Plaintiff received mental health treatment throughout the claimed period of disability, but did not submit an opinion from any treating source that might have been entitled to greater deference. *See* 20 C.F.R. § 416.927(c)(2).

Second, the ALJ's mental RFC is quite restrictive and largely consistent with and accounts for much of the limitations Mr. Spindler and Drs. Voyten, and Lai suggest. For example, the RFC the ALJ assessed accounts for Drs. Voyten's and Lai's opinions that Plaintiff retains the capacity for occasional superficial contact with the public, co-workers, and supervisors (R. 246, 264), by limiting Plaintiff to "occasional superficial interaction with the public and co-workers" and further limiting her to "working with things rather than people," (R. 18).[3] In addition, the ALJ accommodated the opinions of Drs. Voyten and Lai that Plaintiff retained the capacity to sustain routine 3-4 step tasks in a setting where changes are infrequent and any major changes occur with prior explanation and gradual implementation (R. 245-46, 263-64), and Mr. Spindler's opinion that she was capable of understanding, remembering, and carrying out instructions, but would encounter difficulty sustaining a working pace, attention, and concentration for most job settings (R. 828), by limiting Plaintiff to "simple and detailed instructions to complete routine, repetitive tasks" in an environment where "[s]he is able to ask simple questions or request assistance and able to adapt to infrequent changes in work processes and environment" and further adding that the work environment would permit "less than occasional interaction by the supervisor to ensure work standards/quality is maintained" and further permitting Plaintiff to "be off task 8% of the work period." (R. 18.) Although the RFC that the ALJ assessed does not use the sources' exact language to accommodate their opinions, an ALJ is not required to mirror or parrot medical opinions verbatim. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009).

---

[3] Mr. Spindler opined that it was "unlikely" that Plaintiff "would have significant problems in responding appropriately to supervision and to coworkers." (R. 828.)

Third, the ALJ provided a sufficient explanation for why she was not persuaded by Mr. Spindler's or Drs. Voyten's and Lai's opinions to include more severe mental restrictions. As discussed above, the ALJ considered treatment notes from Plaintiff's treating mental health professionals in which Plaintiff endorsed significant environmental stressors such as caring for her young children and mother in addition to her significant household duties and further acknowledged that she was "not medication or treatment compliant." (R. 22 (citing Exhibit 30F at p. 24, R. 2426 (Feb. 2018 treatment record noting that Plaintiff "reports that she has not been taking [L]amictal . . . [and] that she is not medication or treatment compliant")).) *Cf. Sias v. Sec'y of Health & Hum. Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) (discounting the claimant's allegations where he failed to follow prescribed treatment). The ALJ also discussed Plaintiff's significant ADLs and offered her observations of Plaintiff during the hearing.

Finally, many of the limitations Plaintiff argues the ALJ should have adopted are not definitive limitations; that is, the source used equivocal and ambiguous language. Mr. Spindler's opinions that "it *seems unlikely* that [Plaintiff] *would be willing*[4] to tolerate even the routine stressors of competitive employment" and that "her current mental problems *will make it difficult* for her to sustain a working pace and to maintain a level of attention and concentration that would be required for *most* job settings" do not provide the ALJ with definitive limitations to incorporate into the RFC. (R. 828 (emphasis added).) The same is true of Dr. Voyten's and Dr. Lai's opinions that Plaintiff "*may* require occasional redirection" to remain on task. (R. 245, 263 (emphasis added).) *See Mosley v. Berryhill*, No. 1:13-0055, 2017 WL 1153896, at *10 (M.D.

---

[4] Although Mr. Spindler's opinion that it is "unlikely that [Plaintiff] would be willing to tolerate even the routine stressors of competitive employment" is consistent with his opinion that she is "clearly is not motivated to return to work," such a finding, even if adopted, would not impact the ALJ's RFC assessment because a claimant's RFC is an assessment of the most a claimant can do as contrasted with the most a claimant is *willing* to tolerate. *See* 20 C.F.R. § 404.1545(a)(1).

Tenn. Mar. 28, 2017) (an assessment of "difficulty" with an activity "does not constitute a definitive functional limitation that the ALJ was required to incorporate into the RFC"); *Graham v. Comm'r Soc. Sec.*, No. 1:18-CV-1939, 2019 WL 4451366, at *5 (N.D. Ohio Sept. 17, 2019) (finding no violation of SSR 96-8p where the ALJ failed to explain why he did not adopt specific limitations because, *inter alia*, the at-issue limitations "were not definitive as they indicated that Plaintiff '*may* require some repetition' as to instructions and '*may*' need assistance in making independent decisions regarding work goals"); *Slivka v. Berryhill*, No. 1:17-CV-01076, 2018 WL 3340388, at *9 (N.D. Ohio May 29, 2018), *report and recommendation adopted*, 2018 WL 3336461 (N.D. Ohio July 5, 2018) ("To treat the *possible* limitations floated by Dr. Matyi as an affirmative finding that such limitations are mandated would improperly alter the contents of the medical source's opinion."). For this additional reason, undersigned finds that the ALJ did not err in failing to include these non-definitive limitations in Plaintiff's RFC.

In summary, the undersigned finds no error in the ALJ's consideration of the at-issue opinions and that substantial evidence supports her mental RFC determination.

## V. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those

portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE